350 So.2d 1137 (1977)
Cam MAPOLES and Auto-Owners Insurance Company, Appellants,
v.
Clayton Webb MAPOLES, III, by His Next Friend and Father, Clayton Webb Mapoles, Jr., Appellees.
No. DD-317.
District Court of Appeal of Florida, First District.
October 24, 1977.
William H. Clark of Clark, Partington, Hart & Hart, Pensacola, for appellants.
T. Sol Johnson of Johnson, Johnson & Green, Milton, for appellees.
*1138 RAWLS, Acting Chief Judge.
By this interlocutory appeal,[1] appellants challenge the order of the trial court entered in favor of the plaintiffs and against the owner of a dog and her insurer on the issue of liability.
This bizarre accident occurred on December 3, 1971, when an 18-year old boyfriend of appellant Cam Mapoles, upon returning from a hunting trip, placed his loaded 12-gauge pump shotgun in the back seat of a Volkswagen automobile. The young man then drove to Cam's home, picked her up and proceeded to the home of Cam's brother for the purpose of picking up Cam's St. Bernard dog. The 150- to 200-pound dog was compressed into the rear seat of the Volkswagen by Cam's boyfriend. Cam Mapoles testified that she was unaware that the shotgun was in the rear seat and would not have permitted the dog to be placed in the car had she known of the presence of the loaded shotgun.[2] A few seconds after the dog was placed in the Volkswagen, the loaded shotgun discharged severely injuring appellee-plaintiff Clayton Mapoles, III, who was standing near the car. The instant judgment as to liability on the part of Cam Mapoles was entered by the trial court upon the theory that Section 767.01, Florida Statutes, imposed strict liability upon the dog owner under the facts of this case.[3]
Section 767.01, Florida Statutes, provides, inter alia: "... Owners of dogs shall be liable for any damage done by their dogs ... to persons [emphasis supplied]." The constitutionality of this statute has not been challenged. The facts are clear: Cam Mapoles' dog and the loaded shotgun were compressed in a small cubicle; all reasonable inferences lead to the inescapable conclusion that the dog and the shotgun became entangled resulting in the discharge of the shotgun. The unfortunate result of the shotgun firing through the side of the Volkswagen was the severe injury of the minor plaintiff. If the statute means what it says, the syllogism is clear: Cam was the owner of the dog; damage was caused to a person by the dog; and thus the owner of the dog is liable for the damage done.[4]
Appellants, citing a number of cases, theorize that it is only in cases where a dog acts aggressively or affirmatively have the courts interpreted the statute to impose strict liability. What appellants fail to recognize is that the facts in this case are such that the injury resulted from the affirmative act[5] of the dog. Thus, the subject statute that virtually makes an owner the insurer of the dog's conduct is applicable.
AFFIRMED.
ERVIN, J., concurs.
SMITH, J., dissents.
SMITH, Judge, dissenting:
Nothing in this record suggests, let alone demonstrates sufficiently for summary judgment on liability, that the shotgun was fired as a result of canine characteristics for which the legislature intended to make the owner an insurer. To the majority that is irrelevant; they impose liability simply *1139 because in a general sense the dog's presence caused the shotgun to fire. By this draconian reading of the statute, the owner is absolutely liable although dogness played no more a part than if the trigger had been jolted by a cat or a falling sack of groceries. I had understood that "strict liability has been confined to consequences which lie within the extraordinary risk whose existence calls for such special responsibility." W. Prosser, Law of Torts 517-18 (4th ed. 1971). Strict liability for dog biting, barking, chasing, jumping, vicious or rambunctious conduct, yes. For passive movement which discharges a shotgun, no. See Rutland v. Biel, 277 So.2d 807 (Fla.2d DCA 1973); Smith v. Allison, 332 So.2d 631, 634 (Fla.3d DCA 1976):
Where ... the damage results from some physical agency set into motion by a chain of events which may have been triggered by the presence of the dog, absolute liability should not be imposed.
Here the injury was literally "triggered by the presence of the dog," but that is all. I would reverse.
NOTES
[1] Fla.App. Rule 4.2.a provides that interlocutory appeals may be taken from "orders granting partial summary judgment on liability in civil actions".
[2] It is not the owner's acts, but it is the act of ownership by which statutory liability is imposed.
[3] This is the second interlocutory appeal concerning liability in this case. On the prior appearance, Mapoles v. Mapoles, 332 So.2d 373 (Fla. 1st DCA 1976), this court, in reversing a summary judgment as to liability, stated:

"... This cause is remanded to the trial court for the purpose of considering any motions which might be made to raise the applicability of Section 767.01, Florida Statutes, of receiving evidence on the issues as made by the pleadings, and rendering final judgment thereon."
[4] English v. Seachord, 243 So.2d 193 (Fla. 4th DCA 1971), aff'd 259 So.2d 136 (Fla. 1972).
[5] In Allstate Insurance Co. v. Greenstein, 308 So.2d 561 (Fla. 3rd DCA 1975), Greenstein swerved his car to avoid hitting "Pandora", a great dane, that was in the street. In sustaining the trial court's directed verdict in favor of Greenstein, the Third District Court of Appeal held that "Pandora" took some affirmative action resulting in Greenstein's injury.