James LEWELLIN, on behalf of the heirs and next of kin of Chazdon Lewellin, deceased, and James Lewellin, individually, Respondents,

v.

Susan HUBER, et al., Appellants.

No. C5–90–75.

Court of Appeals of Minnesota.

May 22, 1990.

Review Granted June 26, 1990.

William A. Erhart, Jay G. Swokowski, Marvin & Erhart, Anoka, for respondents.

J.D. Haas, Eden Prairie, for appellants.

Considered and decided by LANSING, P.J., and PARKER and RANDALL, JJ.

## OPINION

PARKER, Judge.

This is a civil action for wrongful death resulting from injuries Chazdon Lewellin

sustained when he was struck by a motor vehicle. Susan and Randy Huber appeal from summary judgment in favor of James Lewellin and the heirs and next of kin of Chazdon. The parties stipulated to the facts supporting the cross-motions for summary judgment and to the amount of damages.

The Hubers argue that the trial court erred in applying Minn.Stat. § 347.22 (1988), imposing strict liability based on the following stipulated facts (in part material):

\*　　\*　　\*　　\*　　\*　　\*

3. That prior to Mr. and Mrs. Huber going on a trip they had arranged for Tonia Stomberg to housesit for their property [located at 13060 Sylvan Avenue, Lindstrom, MN]. Ms. Stomberg's primary responsibility was to take care of the house. In this category fell the task of watering the plants, taking care of the dog and the cat. [Tonia Stomberg was encouraged to stay overnight at the Hubers' house.]

4. That prior to Chazdon Lewellin's death, Mr. Huber had on one occasion experienced the dog attempting to get into the front seat. As a result of this behavior, he usually restrained the dog in the back seat of the two vehicles he had by putting a seatbelt through the collar when traveling with the dog.

5. Tonia Stomberg was never aware, prior to the accident, that the dog had attempted to get into the front seat and, as a result, the Hubers usually strapped the dog into the back seat when traveling in any of their vehicles.

\*　　\*　　\*　　\*　　\*　　\*

8. On July 6, 1987, just prior to this occurrence, Tonia Dee Stomberg was driving her vehicle with the dog in the back seat. The dog attempted to get into the front seat by climbing between the seats and was "bugging her." He put his head in Tonia's face. While attempting to get the dog settled, the distraction caused by the dog resulted in her running off

the road into the ditch and over Chazdon Lewellin which impact caused his death.

9. Ms. Stomberg said the following in her statement: "I looked up, was going off the road and could not stop. I saw the boy lying in the ditch sorta toward the road. I could not stop and drove over him."

10. There was no direct contact between the dog and Chazdon Lewellin.

11. The dog in question had a tendency to be frisky but never attacked or bit any person or showed propensities to do the same.

12. That Chazdon Lewellin's injuries were incurred by the motor vehicle driven by Tonia Stomberg striking him.

\*　　\*　　\*　　\*　　\*　　\*

Both briefs mention that the Hubers' dog was a six-month-old golden retriever.

The Hubers contend that even if the statute may apply to these facts, there is a dispute concerning intervening causation, leaving an issue of fact to be tried by a jury.

## ISSUES

1. Did the trial court err in finding that Minn.Stat. § 347.22 imposes absolute liability on dog owners for injuries proximately caused by a dog when the dog interfered with and distracted the driver of a car, causing her to swerve off the road and fatally injure a child?

2. Is there a genuine issue of material fact concerning intervening causation, precluding a finding of proximate cause based on the stipulated facts?

## DISCUSSION

■ On appeal from a summary judgment, this court determines only whether there are issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). When reviewing the trial court's applica-

tion of the law to undisputed facts, this court gives no deference to the court below. · *See A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn.1977).

## I

The facts having been stipulated, we first consider applicability of the dog owner's liability statute. Minn.Stat. § 347.22 provides in part:

If a dog, without provocation, attacks or injures any person who is acting peaceably in any place where the person may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained.

The "or injures" language in the statute necessarily encompasses injuries other than those caused by attack. *Boitz v. Preblish,* 405 N.W.2d 907, 910 (Minn.App.1987). Except for the defenses of provocation and unlawful conduct which are not shown by the evidence in the case, the owner of a dog is absolutely liable for a violation of Minn.Stat. § 347.22. *Seim v. Garvalia,* 306 N.W.2d 806, 812 (Minn.1981). In determining that section 347.22 provided for strict liability rather than establishing a standard for negligence, the supreme court stated:

The statute leaves the dog owner in the same position which the common law left the keeper of a wild animal; namely, with the strict liability of an *insurer.*

*Lavalle v. Kaupp,* 240 Minn. 360, 363, 61 N.W.2d 228, 230 (1953) (emphasis supplied). Therefore, if one chooses to keep a dog, the owner is, in the words of the *Lavalle* case, an insurer of injuries caused by the dog to a person just as is a keeper of wild animals.

The Hubers discuss several foreign cases regarding strict liability and whether an aggressive act of the dog toward the person injured is required. In view of the *Lavalle* case construing our statute, we think the question is whether the dog *in-jured* the person. We think the Hubers misinterpret the element of direct causation as applied in these cases.

Interpreting a statute almost identical to the Minnesota dog owner's liability statute, the Illinois court of appeals found that where the evidence showed the driver of a car to have been injured when his car struck a dog, causing the car to go out of control and overturn, there was a triable issue under the statute as to "whether the action of the dog was the proximate cause of the injury." *Taylor v. Hull,* 7 Ill.App.3d 218, 220, 287 N.E.2d 167, 168 (1972)[1] (reversing the trial court's summary judgment in favor of defendant). The *Taylor* court determined that the dog, which was "walking or trotting on or across the highway," had performed an "overt act," *id.,* as opposed to being a passive force as was the dog in *Bailey v. Bly,* 87 Ill.App.2d 259, 261–62, 231 N.E.2d 8, 9 (1967) (finding no liability where the plaintiff tripped over a dog which was lying down). *Id.* Neither of these cases required that the dog's overt act be directed toward the person injured. The key issue was whether there was "behavior or activity on the part of the dog which caused the injury to the plaintiff." *Id.* at 262, 231 N.E.2d at 10.

Florida courts have found strict liability where the acts of the dog were not directed toward the plaintiff. *E.g. Jones v. Utica Mutual Insurance Co.,* 463 So.2d 1153, 1157 (Fla.1985) (affirming trial court's directed verdict for plaintiff who was struck by a wagon being pulled by a dog chasing after another dog); *Mapoles v. Mapoles,* 350 So.2d 1137, 1138 (Fla.Dist.Ct.App.1977) (affirming summary judgment finding strict liability of dog owner where St. Bernard placed in back seat of Volkswagen caused a shotgun to discharge, injuring plaintiff standing near automobile), *cert. denied,* 364 So.2d 888 (Fla.1978); *see also Brandeis v. Felcher,* 211 So.2d 606, 608–09 (Fla.Dist.Ct.App.1968) (reversing summary judgment in favor of dog owner and re-

---

**1.** The applicable Illinois statute provided: "If a dog, without provocation, *attacks or injures* any person who is peaceably conducting himself in any place where he may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained." *Id.* (citing Ill.Rev.Stat. ch. 8, sec. 12d (1969)) (emphasis supplied).

manding for trial on issue of causation where boy was fatally injured by a car when he ran into the street after being frightened by dogs jumping at a fence adjacent to the sidewalk on which the boy was walking), *cert. denied,* 219 So.2d 706 (Fla. 1968).

 The dissent in *Mapoles* acknowledged that the Florida legislature intended that an owner of a dog be held strictly liable for damages caused by "dog biting, barking, chasing, jumping, vicious *or rambunctious conduct." Mapoles,* 350 So.2d at 1139 (Smith, J., dissenting) (emphasis supplied). Similarly, we find that the purpose of the Minnesota act is to place liability, without negligence, on the owner of an unthinking, impulsive and strong animal for injuries to persons caused by the actions, including rambunctious conduct, of that animal. We do not, however, apply the "but for" test of causation followed by Florida in *Jones,* 463 So.2d at 1155.

We think the causal connection necessary to imposition of strict liability is more properly analyzed as a proximate cause question. Thus, if a dog sets into motion circumstances which result in injury of a person rendering the dog owner liable, it must be shown that actions of the dog were a direct (or proximate) cause of the injury. *See Waite v. American Creosote Works, Inc.,* 295 Minn. 288, 291, 204 N.W.2d 410, 412 (1973) (cited in *Krein v. Raudabough,* 406 N.W.2d 315, 320 (Minn.App.1987)).

## II

 Causation is ordinarily a question of fact for the finder of fact. *Pluwak v. Lindberg,* 268 Minn. 524, 528–29, 130 N.W.2d 134, 138 (1964). Here, however, direct causation appears to have been assumed in paragraph 8 of the parties' stipulation: "the distraction *caused* by the dog *resulted in* [the driver] running off the road into the ditch and over Chazdon Lewellin which impact *caused* his death" (emphasis supplied).

The Hubers raise, however, an issue of intervening cause: negligence of the 16–year–old driver in whose care the dog had been left, and her failure to maintain control of the car. In determining whether there are disputed material facts, the appellate court must view the evidence in the light most favorable to the party against whom summary judgment was granted. *Grondahl v. Bulluck,* 318 N.W.2d 240, 242 (Minn.1982).

Lewellin argues that the actions of the housesitter cannot constitute an intervening cause because her difficulty was directly caused by the negligence of the dog owner. *See Zerby v. Warren,* 297 Minn. 134, 142, 210 N.W.2d 58, 63 (1973) (applying this rule in an absolute liability case). In paragraph 4 of the stipulation of fact, it is established that the owner was familiar with the dangerous propensity of the six-month-old golden retriever to jump into the front seat of the car and restrained the dog by putting a seat belt through its collar. Paragraph 11 states that the dog had a tendency to be frisky. In paragraph 5 the Hubers admitted they had not told the housesitter of the dog's tendency to jump into the front seat or the method developed to restrain it; there is no evidence that the Hubers had told her not to take the dog in the car. Thus, the driver of the car may have been placed in an emergency situation by the negligent failure to warn by the owner, and the emergency rule may be applicable.[2]

Viewing the stipulated facts in the light most favorable to the Hubers, as we must, we note that the driver's statement that she "could not stop" is conclusory and that the catalog of events do not necessarily support this conclusion. The sequence and timing of events under which Tonia chose to continue to drive while "attempting to get the dog settled" are unclear and should

---

**2.** The emergency rule provides that "one, suddenly confronted by a peril, through no fault of his own, who, in the attempt to escape, does not choose the best or safest way, should not be held negligent because of such a choice, unless it was so hazardous that the ordinarily prudent person would not have made it under similar conditions." *Byrns v. St. Louis County,* 295 N.W.2d 517, 519 (Minn.1980) (quoting *Johnson v. Townsend,* 195 Minn. 107, 110, 261 N.W. 859, 861 (1935)).

be tested by direct and cross-examination of her; in her statement to the police, Tonia indicated that at the time of the accident "the dog had gotten into the front seat and fell on the floor under the dash on the passenger side." We cannot find as a matter of law that Tonia's acts did not amount to an intervening cause. Accordingly, we must vacate the judgment and remand for trial on the issue of intervening cause and the applicability of the emergency rule.

## DECISION

We affirm the trial court on applicability of strict liability under Minn.Stat. § 347.22. We hold, however, that a genuine issue of material fact exists as to intervening negligence of the driver and consequently must vacate the judgment and remand for trial of that issue.

Affirmed in part, reversed in part, judgment ordered vacated, and remanded.

RANDALL, J., dissents with opinion.

LANSING, J., concurs specially.

RANDALL, Judge, dissenting.

I respectfully dissent. The majority remands to the trial court just on the issue of intervening cause. I do not find that Minn. Stat. § 347.22 (1988), the "dog bite" statute, is applicable at all to this set of facts, and I would remand for a simple common law negligence action on all aspects of liability.

I find the legislative purpose of Minn. Stat. § 347.22 is aimed at attacks or other *direct* injuries caused by dogs. The only Minnesota "non-bite case" applying this statute is *Boitz v. Preblish*, 405 N.W.2d 907 (Minn.Ct.App.1987).

The plaintiff in *Boitz* was injured when a dog bumped into the back of plaintiff's legs, causing him to lose his balance and fall. On those facts, the trial court did not impose strict liability on the dog's owner, finding that the statute was meant to cover only "vicious" or dangerous attacks by dogs, and decided that an accidental bumping, although direct contact, was not covered. Our holding in *Boitz* was limited to a finding

> that injuries inflicted by a dog outside the scope of a vicious attack are not, as a matter of law, excluded from coverage under the statute. Appellants are entitled to a trial under section 347.22.

*Id.* at 910. *Boitz* does not stand for the proposition that whenever a dog can be placed within a *Palsgraf*[1] chain of causation that section 347.22 automatically controls. I feel the majority's conclusion to be that broad an extension.

It is true that in *Boitz*, we did not restrict application of section 347.22 to cases where there were "vicious" attacks. But the facts in *Boitz* did show a direct contact. There was a direct (although concededly not vicious) bumping of the plaintiff by the dog and direct causation between the contact, the plaintiff's fall to the ground, and his resulting injury. In *Boitz*, we merely did not deem as controlling the dog's "intent," (the determination of which would lead to a morass of subjectivity) and thus found the statute covered both "playful" and "vicious" bites and other attacks or injuries.

Although other jurisdictions with somewhat similar laws have gone in varying directions, I find nothing in Minnesota directly resembling this fact situation, and it appears to be a case of first impression. Minnesota's legislative and case law histo-

1. In *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928) employees of the defendant railroad company, attempting to assist a running passenger in boarding a train, knocked a package from the arms of the passenger and it fell on the rails. The package, containing fireworks, exploded. As a result of the explosion some scales were overturned many feet away on the platform which fell on the plaintiff and injured her.

A *Palsgraf* chain refers to negligence cases in which a series of independent events acting together, like a collapse of a long line of dominos, produce an injury, and the question becomes whether a tortfeasor in the front of the line stands legally liable to an injured party a few events removed. There are no hard and fast rules. Sometimes legal causation and thus liability is found, sometimes it is not. In *Palsgraf* Judge Cardozo held there was no negligence toward the plaintiff because no harm to her could have possibly been anticipated. The only harm foreseeable by the railroad employees was to the package or, at most, to the passenger boarding the train.

ry support the notion that this strict liability statute was passed to remove the need for persons injured by a biting dog to show, somehow, that the dog had dangerous propensities, and the owner knew or should have known of that propensity. The most common way to show that a pet dog had a dangerous propensity is to show that it had bitten someone before. Thus the old common law phrase of "every dog gets one free bite" worked its way into the legal history of handling pet dogs.

The statute in issue here was aimed specifically at removing this burden from plaintiffs and simplifying their road to recovery when a dog bit or otherwise attacked or injured them. I do not find the unusual fact situation which we have here falls within the scope of the problem Minnesota's "dog bite" statute was meant to cure. I do not find any evil which a common law negligence lawsuit against the animal's owner cannot cure.

It just does not seem to me that the frisky activities of a dog in a car come under the ambit of "if a dog * * * attacks or injures any person * * *." I would hold that respondents have the right to pursue a common law negligence action against the dog owners just as they do against the driver and owner of the car. They may or may not prevail. It is easily within the realm of possibility that, based on these facts, a jury could find some comparative fault on the part of the dog owners as well as the driver of the vehicle. On the other hand, I find it within the realm of possibility that a jury could find liability only on the part of the driver of the vehicle, or even only on the part of the dog owners.

I dissent and would restrict respondents to a common law negligence action against appellant dog owners.

LANSING, Judge (concurring specially).

I concur in the analysis of Judge Parker. Although there is superficial appeal to the idea of limiting the reach of the statute to an injury caused by direct contact with a dog, neither the statute nor the longer view calls for such a restrictive reading. The bright line of actual contact soon gives way to shadings of whether a dog owner is liable if a dog with a stick in its mouth injures a child's eye or whether a dog that knocks over one child who knocks over another child is within the purview of the statute. Rather than draw a rigid line of actual contact, it is more reasonable to use the flexible and time-tested standard of proximate cause with the attendant safeguard of intervening cause.